<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATHANIEL HUTCHINS,** | 01-CV-1462 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **UNITED PARCEL SERVICE, INC.,** | |
| Defendant. | |

Jacqueline Bittner, Esq.
40 Fayette St., No. 63
Perth Amboy, New Jersey 08861

*Attorney for Plaintiff*

Michael T. Bissinger, Esq.
Pitney Hardin LLP
P.O. Box 1945
Morristown, N.J. 07962

*Attorney for Defendant*

**MARTINI, U.S.D.J.:**

      This matter comes before the Court on defendant United Parcel Service, Inc.'s ("UPS's") Motion for Summary Judgment.  Plaintiff Nathaniel Hutchins opposes the motion on the merits and pursuant to Fed. R. Civ. P. 56(f).  There was no oral argument.  *See* Fed. R. Civ. P. 78.  For the reasons set forth below, Hutchins' Rule 56(f) request is **DENIED**, UPS's motion for summary judgment is **GRANTED**, and Hutchins' Amended Complaint is **DISMISSED** in its entirety.

**I.     BACKGROUND**

On March 27, 2001, plaintiff Nathaniel Hutchins, an African American, grade 16 manager working for defendant UPS, filed Civil Action No. 01-1462 (hereinafter "*Hutchins I*"). The case was assigned to the Honorable William G. Bassler. Hutchins' three-count Complaint alleged that UPS retaliated against him in violation of 42 U.S.C. §§ 1981, 1988, Title VII of the Civil Rights Act of 1964, and the New Jersey Law Against Discrimination ("NJLAD"). The Complaint did not allege any race discrimination claims, nor did plaintiff amend his Complaint by the November 1, 2001 amendment deadline.

Instead, four months after the deadline to amend had passed, Hutchins sought to amend his Complaint to include race discrimination claims. Magistrate Judge Madeline C. Arleo denied that request in part. Because Hutchins had missed the amendment deadline, Magistrate Judge Arleo would only allow Hutchins to amend his complaint to plead race discrimination claims that arose after November 1, 2001. Despite this ruling, Plaintiff did not amend his *Hutchins I* Complaint.

Instead, on August 30, 2002, plaintiff chose to file Civil Action No. 02-4274 against UPS (hereinafter "*Hutchins II*"). *Hutchins II*, like *Hutchins I*, was assigned to Judge Bassler. On October 2, 2002, plaintiff filed a two-count Amended Complaint, which alleged that UPS discriminated against him because of his race in violation of 42 U.S.C. § 1981 and NJLAD. These allegations were drawn broadly enough to encompass claims antedating November 1, 2001. UPS moved to dismiss the Amended Complaint in light of Magistrate Judge Arleo's previous ruling.

On December 5, 2002, *Hutchins I* was reassigned from Judge Bassler to me. *Hutchins II*, and the pending motion to dismiss, however, remained pending before Judge Bassler. On February 13, 2004, UPS moved before me for summary judgment in *Hutchins I*. Before that motion was resolved, on March 31, 2004, Judge Bassler issued his decision in *Hutchins II* on UPS's motion to dismiss, dismissing all of Hutchins' discrimination claims arising before November 1, 2001. He did not, however, dismiss any discrimination claims arising after November 1, 2001. The remainder of *Hutchins II* was then consolidated with *Hutchins I*.

On January 19, 2005, this Court issued its decision granting summary judgment in UPS's favor and dismissing all of plaintiff's retaliation claims in *Hutchins I*. All that now remains before this Court are plaintiff's discrimination claims arising after November 1, 2001 as alleged in his *Hutchins II* Amended Complaint. Essentially, those claims allege that plaintiff received a discriminatory pay raise in 2002 due to his race. On April 1, 2005, UPS moved for summary judgment of those remaining claims. That motion is now before the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. A litigant may discharge this burden by exposing

"the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring it such that a reasonable jury could return a verdict in that party's favor. *Id.* at 249.

**III.    DISCUSSION**

UPS moves for summary judgment on two distinct bases: (1) Hutchins' discriminatory pay claims are barred under the doctrines of law of the case and issue preclusion; and (2) Hutchins' discriminatory pay claims are meritless and, as a result, should be dismissed. Hutchins disagrees with both bases and, citing Fed. R. Civ. P. 56(f), argues that summary judgment is inappropriate because discovery is not yet complete and UPS did not comply with its discovery obligations. These arguments are addressed in order.

      A.      **Law of the Case and Issue Preclusion**

UPS argues that Hutchins' discriminatory pay claim is barred under the doctrines of law of the case and issue preclusion.  UPS argues that because this Court previously found that Hutchins' raise in 2002 was "comparable to his peers,"[1] Hutchins cannot relitigate that finding to support his claim that UPS discriminated against him by giving him an unequal pay raise in 2002.

  "[U]nder the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *United States v. Kikumura*, 947 F.2d 72, 77 (3d Cir. 1991).  The doctrine of issue preclusion "precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted."[2]  *Todaro v. Township of Union*, 27 F. Supp. 2d 517, 529 (D.N.J. 1998) (internal quotations marks omitted).

---

[1] (1/19/05 Op. at 23).

[2] Issue preclusion, also referred to as collateral estoppel, is applicable if:

> the party asserting the bar demonstrates that: (1) the issue to be precluded is identical to the issue decided in the first proceeding; (2) the issue was actually litigated in the prior action, that is, there was a full and fair opportunity to litigate the issue in the prior proceeding; (3) a final judgment on the merits was issued in the prior proceeding; (4) determination of the issue was essential to the prior judgment; and (5) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior proceeding.

*Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 204 (3d Cir. 2004) (quoting *Pace v. Kuchinsky*, 347 N.J. Super. 202 (App. Div. 2002)).

As an initial matter, the Court should note the inherent difference in these two theories. Law of the case applies in subsequent proceedings of the same case, whereas issue preclusion applies in a second proceeding involving a party to the first proceeding. *See In re Remeron Antitrust Litig.*, 335 F. Supp. 2d 522, 526 n.4 (D.N.J. 2004). Put differently, law of the case and issue preclusion arise under different circumstances. This difference, however, does not affect the Court's decision.

The excerpt that UPS latches onto was not a finding that should give rise to a preclusive effect under either doctrine. When the excerpt is looked at in its proper context, it is clear that the Court's finding is not as definitive as UPS makes it out to be. The Court's opinion stated that "[Hutchins'] raises *appear* to be comparable to his peers,"[3] not that his raises *were* comparable to his peers. Further, the Court is mindful of the almost bare record that was before it when deciding Hutchins' retaliatory pay claims.[4] Hutchins now adduces additional evidence that he believes will preclude summary judgment in the context of his discriminatory pay claim. Ultimately, whether or not that additional evidence is sufficient to establish a *prima facie* case, or to rebut defendant's reasons for providing plaintiff with a particular raise, is a different question. But given these circumstances, the Court believes that it would be inappropriate to bar Hutchins' claims from going forward under either the law of the case or issue preclusion. Therefore, the Court will turn to the merits of Hutchins' claims.

---

[3] (1/19/05 Op. at 23) (emphasis added).

[4] Contrary to Hutchins' bald assertion that "[t]he court did not examine the complete record on the issue of retaliatory pay", (Pl.'s Opp'n Br. at 8), the Court examined the complete record that was properly before it and was not stricken for failure to comply with L. Civ. R. 7.2(a). (*See* 1/19/05 Op. at 22).

B.	Hutchins' § 1981 And NJLAD Discrimination Claims

Hutchins' claims of discriminatory pay under § 1981 and NJLAD are analyzed under the burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 41 U.S. 792 (1973).[5] *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087-88 (3d Cir. 1996); *Coward v. ADT Security Sys., Inc.*, 140 F.3d 271, 273 (D.C. Cir. 1998); *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 97 (1990). To establish a *prima facie* case of disparate pay, Hutchins must establish by a preponderance of the evidence that he performed work "substantially equal" to that of white employees who were compensated at higher rates than he was. *Aman*, 85 F.3d at 1087; *Coward*, 140 F.3d at 273.

Hutchins has not satisfied his *prima facie* burden. He has not shown that white employees who performed substantially the same work were compensated at higher rates. Indeed, Hutchins attempts to avoid all comparisons of pay raises, arguing that other factors need to be taken into consideration, such as how well the other employees performed their jobs. However, as an initial matter, Hutchins cannot show that white employees who performed

---

[5] Citing *Grigoletti v. Ortho Pharmaceutical Corp.*, 118 N.J. 89 (1990), Hutchins asserts that his race discrimination claim under NJLAD is governed by either the three-tier test established under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), or Title VII. Plaintiff, however, misreads *Grigoletti*. In *Grigoletti*, the New Jersey Supreme Court held only that gender discrimination claims alleging unequal pay for equal work are to be judged by the EPA methodology. 118 N.J. at 109-110. Contrary to Hutchins' representation, *Grigoletti*'s holding does not affect race discrimination claims. In fact, that should have been apparent because the EPA "concentrates exclusively on assuring 'equal pay' in certain situations where members of the opposite sex are performing 'equal work.'" *Id*. at 100. Thus, the EPA methodology does not apply in this case. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087-88 (3d Cir. 1996) (citing *Grigoletti* for the proposition that the plaintiffs' race discrimination NJLAD claims "parallel the Title VII claims"); *cf. Bitsko v. Main Pharmacy, Inc.*, 289 N.J. Super. 267, 272-73 (App. Div. 1996) (applying the Title VII methodology to an age discrimination claim based on unequal pay).

substantially the same work were given higher raises. Looking at all grade 16 managers, Hutchins received a raise equal to or better than 23 out of 37, or 62 percent, of his peers.[6] Moreover, even taking performance into account, no grade 16 manager that was given a performance rating equal to or less than Hutchins received a higher raise.

To the extent that not all grade 16 managers constitute the correct comparators, but only those managers that reported to Hutchins' supervisor in 2001, Thomas Valley, Hutchins still does not establish his *prima facie* case. In 2001, Hutchins and four peers reported to Valley. All received comparable raises in 2002. Two peers received the same raise as Hutchins, while the other two received a marginally higher raise. The two employees that received the same raise as Hutchins had salaries far closer to Hutchins' salary than the other two employees. Hutchins' response to this seemingly dispositive evidence is to attempt to distinguish one of the two white employees that received the same raise as him.[7] However, in doing so, he fails to show that the two employees who received higher raises were the only ones who performed substantially the same work as he did in 2001.[8] Hutchins simply never addresses the type of work performed by

---

[6]Hutchins argues that there were 47 grade 16 managers in 2002. However, the evidence before this Court shows that there were only 37 managers in 2001 who received raises in 2002. (*See* Louhisdon Decl., Ex. 1).

[7]Hutchins argues that Harry Baroni should not be considered a comparator because he did not report to Valley for all of 2001. That, however, does not show that Baroni performed substantially different work in 2001. Further, although Baroni may not have reported to Valley for all of 2001, Valley was the person that recommended Baroni's raise in 2002 after he discussed Baroni's performance with Baroni's 2001 supervisor. Therefore, Hutchins has not provided an adequate reason to discount Baroni as a comparator.

[8]Even if Hutchins could make that showing, it would hurt him more than it would help him. The two employees that received marginally higher raises than Hutchins also received significantly lower salaries than Hutchins. Thus, if they were the only two comparators, Hutchins would be unable to show that white employees who perform substantially the same

other grade 16 managers. Thus, there is no basis to ignore them. In sum, plaintiff cannot establish his *prima facie* case because he cannot show that white employees who performed substantially the same work were compensated at a higher rate than he was in 2002.

Hutchins also alleges that he received unequal pay relative to other grade 16 managers in November and December 2001. The only employee Hutchins identifies as a comparator for this allegation is John Wallentine. Hutchins was hired in 1977; Wallentine was hired in 1981. By 2001, Wallentine received a higher salary than Hutchins. However, Hutchins has failed to present any evidence that would show that this salary differentiation is discriminatory. Their 2001 salaries were the result of the previous two decades worth of work performance at UPS. In order to satisfy his *prima facie* burden, Hutchins has to show that he performed substantially the same work as Wallentine for that time period. Otherwise, there is no basis for comparison. Over the course of Hutchins' career, he possessed many different job titles and suffered from poor performance reviews. (*See, e.g.*, 1/19/05 Op. at 3, 18-19). Hutchins, however, provides no evidence regarding the type of work Wallentine performed or how well he performed over those 20 years. Devoid of any context, Hutchins cannot simply point to two different salaries and claim that he is being discriminated against on the basis of race. Consequently, his unequal pay claim for November and December of 2001 is without merit.

Even assuming *arguendo* that Hutchins could establish a *prima facie* case of discriminatory pay, the inquiry would not end there on UPS's motion for summary judgment. Rather, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory

---

work were compensated at higher rates. Instead, the reverse would be true; Hutchins would have been the employee compensated at a higher rate.

9

reason" for plaintiff's unequal pay. *See McDonnell Douglas*, 411 U.S. at 802; *Grigoletti*, 118 N.J. at 102. The defendant "satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the difference in pay. *Fuentes*, 32 F.3d at 763. The defendant "need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.*; *Bitsko v. Main Pharmacy, Inc.*, 289 N.J. Super. 267, 273 (App. Div. 1996). Once the defendant satisfies its "relatively light burden," the burden shifts back to the plaintiff who must then show that the defendant's proffered reason or reasons are a pretext for discrimination. *Fuentes*, 32 F.3d at 763.

UPS proffers the following legitimate reason for Hutchins' raise – Valley gave Hutchins the raise he deserved. In doing so, Valley considered the four factors as required by the UPS guidelines. These factors were: "(1) Individual salary position within the salary range; (2) QPR [("Quality Performance Rating")] results; (3) Overall contribution to center/department and district results; and (4) Ability to deliver effective business solutions when facing current challenges." (Def.'s Br. at 10). Valley stated that he followed the guidelines when determining Hutchins' raise and took into consideration Hutchins' QPR score, salary, and performance overall and as a leader. (*See* Valley Conf. Decl. at ¶¶ 6-9). Valley also followed the guidelines and took into consideration the four factors when determining raises for the other four managers that reported to him in 2001. Ultimately, they all received raises that were comparable.

Buttressing this legitimate reason is the fact that Hutchins' 2002 raise was approved by someone of the same race as plaintiff – Rudy Louhisdon, the District Human Resources Manager for the Central Jersey District in 2002. *See Dungee v. Northeast Foods, Inc.*, 940 F. Supp. 682,

10

688 n.3 (D.N.J. 1996) (stating that the fact that the final decision maker was of the same protected class as the plaintiff "weakens any possible inference of discrimination"); *Murphy v. Housing Auth. and Urban Redevelopment Agency of the City of Atlantic City*, 32 F. Supp. 2d 753, 766 (D.N.J. 1999) (same). As District Human Resources Manager, it was Louhisdon's responsibility to review and approve the annual salary increases for all grade 16 managers in the Central Jersey District. Louhisdon reviewed and approved Hutchins' 2002 raise.[9] Thus, UPS asserts that Hutchins received the raise he deserved, which was reviewed and approved by a black supervisor.

Plaintiff proffers numerous reasons why UPS's legitimate explanation is a pretext for discrimination. Ultimately, each and every one of them falls flat.

Hutchins alleges that Valley failed to follow UPS Salary Administration Guidelines when determining Hutchins' 2002 raise. Under the Guidelines, a pay raise is to be computed as a percentage of the previous year's salary. That percentage, multiplied by the previous year's salary, determines the dollar amount of the raise. Hutchins argues that rather than determine his raise using a percentage as required by the Guidelines, Valley determined the raise based on the dollar amount he felt was appropriate. Hutchins' argument is unsupported. The deposition testimony Hutchins relies on shows that Valley followed the policy by using percentages, not dollar amounts. The fact that he then adjusted the percentages to ensure the pay raise reflected the result he wanted does not show a deviation from the Guidelines. Indeed, the Guidelines

---

[9]Hutchins argues that Louhisdon did not review Hutchins' 2001 QPR with Valley. But, in doing so, Hutchins fails to show that Louhisdon had an obligation to do so. Rather, all Louhisdon had to do was review and approve the raises for all of the grade 16 managers for the year 2002. Because the uncontested evidence demonstrates that he did just that, plaintiff's argument is inapt.

explicitly allow for such changes, stating "[i]f adjustments need to be made, make them in the '% Inc.' column **only**." (Bittner Decl., Ex. C at 9) (emphasis in original). Thus, Hutchins has not shown that Valley deviated from or did not follow the Guidelines.

      Hutchins argues that the percentage increase in his raise is lower than his peers. This argument is also unsupported. Two of the four managers plaintiff identifies as comparators, who received salaries similar to plaintiff's, received the same percentage raise as plaintiff. As for the other two comparators, although they did receive higher raises as a percentage of their base salary, the reason is quite simple – their base salaries were lower than Hutchins' base salary. Thus, since they were given a comparable raise in dollars, they necessarily were given a greater percentage raise.

      Hutchins argues that Valley recommended a merit raise for each manager which exceeded the 2002 budgeted allocation except for his raise. Once again, Hutchins fails to support his argument with evidence. Hutchins does not identify what the budgeted allocation was for each person. This failure of proofs is exacerbated when it comes to consideration of a comparator like Baroni. There is no evidence that Baroni, who received slightly less than Hutchins in salary, and received the same percentage raise, was given a raise that exceeded the budgeted allocation. In fact, the evidence suggests that if Baroni received an excessive raise, then Hutchins did as well.

      Hutchins then shifts focus from attacking the raises received by his peers to the evaluation he received for his work performance in 2001. He claims that his low raise was the result of a discriminatory evaluation. As proof that he received a discriminatory evaluation, Hutchins argues that Valley altered his 2001 QPR assessment form thereby lowering his overall QPR score. Hutchins' argument, however, is baseless. UPS policy required that people

performing the same job be evaluated on the same criteria. This was accomplished by evaluating similarly situated employees on the same performance elements that were assigned the same weight. A weighted score was then generated to produce an employee's total value QPR. Hutchins disregarded that policy by not only giving elements the wrong weights, but by not including all of the correct elements. For example, out of the ten elements Hutchins properly included on his form, he assigned the wrong weight to eight of them. Hutchins' deviation from the proper elements and weights provided him with a favorable QPR score. When Hutchins brought his manifestly incorrect 2001 QPR form to Valley for review, Valley altered Hutchins' form to reflect the true standards and weights that should have been used in the first place. This resulted in a significant reduction in Hutchins' QPR score. Accordingly, any drop in Hutchins' QPR score was attributable to Hutchins having improperly filled out his QPR form, not pretext.

Hutchins asserts that his 2001 performance was not judged on the same elements and weights as his peers. As evidence, Hutchins proffers the 2001 QPR of Ed Quigley. However, Ed Quigley was not a comparable peer. He was a grade 14 supervisor, with different duties and a lower salary than Hutchins. (Valley Conf. Decl. ¶ 14).

Hutchins also argues that he was evaluated differently than the center managers for the Lawrence and Hamilton Centers. Hutchins, however, provides no evidence to support that argument.[10] Indeed, the evidence that is before the Court demonstrates otherwise. An exhibit submitted by plaintiff shows that all Centers, including the Trenton Center, used the same 2001

---

[10]Hutchins does argue in his affidavit that the Hamilton Center's results declined under Gerald Birdsall's management and that John Montecalvo's performance as Lawrence Center Manager "was mediocre as best." (Hutchins Decl. ¶¶ 15-16). But, such factual arguments in an affidavit are expressly prohibited by L. Civ. R. 7.2(a). As such, pursuant to Rule 7.2(a), the offending paragraphs are stricken.

QPR elements and weights.[11]  Moreover, the 2001 QPR for John Montecalvo, the Lawrence Center Manager, confirms that he was evaluated on the same elements and weights as plaintiff. (*Compare* Montecalvo Decl., Ex. A *with* Hutchins Decl., Ex. B).[12]

Hutchins also claims that his QPR was skewed because one air driver's numbers were included in the Trenton Center's 2001 numbers.  However, even if this claim were true, Hutchins fails to show *how* one driver's numbers would affect the Trenton Center's numbers.  There is no evidence of the air driver's numbers, the QPR elements they impacted, and the degree to which those elements were impacted.  Hutchins' reliance on argument alone to make this point is insufficient to rebut UPS's legitimate explanation.

And lastly, Hutchins argues, without citing any case law, that even if Louhisdon approved Valley's 2002 raises, his approval was "legally insignificant." (Pl.'s Opp'n Br. at 21).  Hutchins' basis for making that argument is that Louhisdon became the District Human Resources Manager for the Central Jersey District in January 2002 and, therefore, did not know the grade 16 managers well at the time he approved their raises.  Plaintiff's argument, however, is flawed. Whether or not Louhisdon personally knew Hutchins is beside the point.  The information that was before Louhisdon when he approved the 2002 raises, including an employee's race, 2001 QPR score, and performance/ranking code, was sufficient to enable him to reach a reasoned decision that Hutchins' performance merited the raise he received.  Hutchins does not proffer any evidence showing otherwise.

---

[11](*See* Hutchins Decl., Ex. B).

[12]Hutchins provides no evidence showing that Birdsall was evaluated any differently.

14

In short, Hutchins provides no evidence which casts doubt on his 2001 QPR score. Nor does he muster any evidence that demonstrates his 2002 raise was discriminatory. Rather, UPS's legitimate reason – that Hutchins received a raise worthy of his work performance, which was approved by a black supervisor – remains unscathed. Consequently, summary judgment is granted in favor of UPS and Hutchins' § 1981 and NJLAD discrimination claims are dismissed.

### C.   Hutchins' Request for Relief Under Rule 56(f)

Hutchins seeks to preclude the entry of summary judgment by invoking Fed. R. Civ. P. 56(f). Hutchins asserts three reasons to suspend imposition of summary judgment: (1) no discovery has been taken on plaintiff's discrimination claim; (2) UPS improperly withheld relevant comparator performance materials; and (3) UPS withheld relevant evidence in a state court proceeding. Because the third reason has no bearing on this proceeding, and is inappropriately raised by Hutchins before this Court, the Court will only consider the first two reasons.

Rule 56(f) gives a court discretion to delay deciding a summary judgment motion.[13] However, in order to avoid summary judgment, a party must specify in an affidavit "what

---

[13]Rule 56(f) states:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

Fed. R. Civ. P. 56(f).

particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 140 (3d Cir. 1988).

The Court finds plaintiff's Rule 56(f) affidavit wanting.  Although plaintiff makes generalized assertions that no discovery has been taken in this case, plaintiff fails to address why the discovery he obtained in *Hutchins I* is not sufficient.  Further, and more importantly, he fails to identify what particular information he would seek if the motion for summary judgment were stayed.  Plaintiff's brief asserts that "UPS produced virtually no comparator information with respect to the performance of individuals or specific operations run by comparators."  (Pl.'s Opp'n Br. at 24).  First, this acknowledges that at least some information was produced.  And second, plaintiff fails to identify the missing comparator information.  Without a clear description of the particular information sought, plaintiff cannot make his showing that further discovery would preclude summary judgment, and the Court cannot determine why plaintiff did not obtain this information earlier.

In sum, plaintiff's request to stay the summary judgment motion under Rule 56(f) is denied.

**IV.    CONCLUSION**

For the aforementioned reasons, Hutchins' Rule 56(f) request is denied, summary judgment is granted in favor of defendant UPS, and Hutchins' Amended Complaint is dismissed in its entirety.

July 27, 2005                                                                  s/ William J. Martini
                                                                               **William J. Martini, U.S.D.J.**